Marian F. KALEJTA, Defendant Below, Appellant,

v.

The STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Sept. 9, 1971.

John Behen Maybee, Dover, for appellant.

Charles Brandt, Deputy Atty. Gen., Dover, for the State.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, Justices, sitting.

WOLCOTT, Chief Justice:

This is an appeal from a conviction of manslaughter. The defendant is now out on parole.

The defendant, Marian F. Kalejta, was married to a Sergeant in the Air Force. He anticipated being transferred to Vietnam and, in preparation for that event, brought his wife to Dover and rented a house for her there. The Sergeant then returned to an Air Force Base in Utah in preparation for shipment to Vietnam. In December, 1967, the Sergeant returned to Dover for Christmas leave.

Both the Sergeant and the defendant were alcoholics. Their marriage had been a series of alcoholic problems leading to domestic squabbles. On his return to Dover, both the Sergeant and his wife went on a drinking spree. On January 4, 1968, one Sue Evans, a casual friend of the defendant, left her husband and asked the defendant and her husband if she could spend the night.

The three then started drinking. Ultimately they became extremely intoxicated. Around midnight the three of them somehow wound up more or less nude and began taking pictures of each other with a Polaroid camera. At some point the camera refused to function and the defendant took it next door to have the camera adjusted and refilled with film. Upon her return to her home, she surprised Sue and the Sergeant in an act of sexual intercourse. She then fired three shots from a .22 caliber pistol at the Sergeant, hitting him once.

She was placed under arrest and charged with assault with intent to kill. The Sergeant was taken to the hospital where he died two days later. The defendant was then indicted for murder in the second degree.

The jury acquitted her of murder in the second degree, but found her guilty of manslaughter.

The first point raised by defendant is that the court instructed the jury on two

forms of manslaughter. The argument is based upon 11 Del.C. § 575 which reads as follows:

"§ 575. Manslaughter

"(a) Whoever commits the crime of manslaughter, except as provided in subsection (b) of this section, is guilty of a felony, and shall be fined not more than $10,000 or imprisoned not more than 30 years, or both.

"(b) Whoever, being a husband, commits the crime of manslaughter on a person found in the act of adultery with his wife, and it is so found by the verdict, shall be fined not less than $100 nor more than $1,000, and imprisoned not more than 1 year."

The argument is that the jury found the defendant guilty of manslaughter under § 575(b) which provides that a person convicted under that section shall be guilty of a misdemeanor because the crime is not specifically labeled a felony. The maximum sentence to be imposed upon a conviction under that subsection is imprisonment for not more than one year. The defendant actually was sentenced to five years under § 575(a). It is argued, therefore, that the sentence imposed was erroneous and that at the time the Superior Court had no original jurisdiction over misdemeanors.

■ Irrespective of whether or not the court had jurisdiction over misdemeanors, it is quite clear that 11 Del.C. § 575(b) has no possible application in the matter before us. The argument made in behalf of the defendant is that the Code section is unconstitutional in limiting its application to that of a husband in the light of current social conditions, and that it must therefore be construed to include the act of a wife in killing when she discovers her husband *in flagrante delicto.* Irrespective of this, the section has no possible application. It provides for the reduction of sentence

of a husband who kills his wife's paramour when he finds his wife in an act of adultery. This is not the case before us since this defendant actually killed her husband. Therefore, under no circumstances could the section have any application to the case at bar.

■ The defendant argues earnestly that in fact the trial judge instructed the jury that they could find the defendant guilty of manslaughter under § 575(a) or of manslaughter under § 575(b). We think, however, to the contrary. The language of the charge on which the argument is based related to the rule that sufficient provocation will reduce the crime of murder in the second degree to manslaughter. It is true that the trial court instructed the jury that where a wife "finds a woman in the act of adultery with her husband and she kills her husband or the woman", such provocation may reduce the crime of murder in the second degree to that of manslaughter.

This, however, is not a charge that a conviction may be made in this case under § 575(b). As we have pointed out, it has no application to the case at bar since the defendant actually killed her husband and not his paramour.

Furthermore, when the jury returned to the courtroom the forelady was asked if they had reached a verdict and, upon her affirmative answer, she stated it as follows: "We find the defendant guilty of manslaughter." Thereupon, counsel for the defendant asked that the jury be asked upon what theory they had found her guilty—whether as indicated in the indictment or by reason of the adulterous conduct of the deceased. The forelady then answered, "We find her guilty of manslaughter by reason of the adulterous provocation of her husband's conduct."

It is therefore quite plain that the jury found sufficient provocation from that conduct to reduce the crime from murder

in the second degree, with which she was charged, to that of manslaughter. There was no error on the part of the trial judge.

Next, the defendant argues, based upon an alleged conflict in testimony between two expert witnesses, that the State had failed to meet its burden of proof on the cause of death.

■ The doctor who made the autopsy testified that in her opinion the cause of death of the deceased husband was that of the gunshot wound. Thereupon, in cross-examination of her and of another doctor, counsel for the defendant presented various possibilities of the deceased's death arising from alcoholism. However, the fact is that the doctor who performed the autopsy stated positively that death was due to the gunshot wound.

There is no deficiency in the State's case in this respect.

Finally, the defendant argues that the instructions to the jury on the defense of insanity and on the question of intoxication were erroneous.

We have carefully read the charge and with respect to the instructions given on the defense of insanity we are of the opinion that the general law on the subject and of this State was complied with.

■ With respect to the instruction concerning the effect of intoxication, we also think no error was committed by the trial judge. If anything, the charge was more favorable to the defendant than our law permits. In this State, intoxication, if it exists to such an extent as to prevent the forming of a specific intent, will reduce the crime of murder from first to second degree. Fisher v. State, 4 Storey 542, 182 A.2d 333 (1962).

We accordingly find no reversible error in this record and affirm the conviction below.